# FLOOD *v.* MERCHANTS MUTUAL INSURANCE COMPANY

[No. 129, September Term, 1962.]

*Decided January 16, 1963.*

374

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, MARBURY and SYBERT, JJ.

*Calvin E. Cohen,* with whom were *John B. Wright* and *Wright & Cohen* on the brief, for the appellant.

*Max Sokol* and *Melvin J. Sykes,* with whom were *Dickerson, Nice & Sokol* on the brief, for the appellee.

MARBURY, J., delivered the opinion of the Court.

This is an appeal from the judgment of the Superior Court of Baltimore City sustaining appellee's demurrer to the third count of appellant's declaration, without leave to amend. The third count sought to recover in tort from an employer's workmen's compensation insurer for alleged negligence, consisting of claimed malpractice of physicians selected by the insurer for treatment of an employee's injuries.

On February 4, 1958, appellant, employed by Yeaton and Company, as a laborer in a coal yard, was injured when a large lump of coal fell from a coal elevator, striking him in the back while he was in a stooped position in the act of shoveling coal. Upon instructions of the appellee, the employer sent appellant first to a Dr. Wilkerson, and later, to the Drs. Reifschneider (there being two of them in practice together) for examination and treatment. Dr. Wilkerson's nurse treated him on February 7, and on February 10 Dr. Wilkerson treated him and sent him back to work. An X-ray was taken by the nurse on the February 7 visit. On February 11, his first day back on the job, appellant aggravated the injury in attempting to move a coal loader. He returned to

Dr. Wilkerson for treatment and for approximately two weeks was given pills and heat treatments. Dr. Wilkerson had diagnosed the injury as contusions and hematoma of soft tissue, and could find no evidence of bone injury in the X-ray. He discharged him at the end of the two week period, saying there was nothing more he could do and finding appellant fully recovered. During this entire period appellant still complained of severe pain.

The Workmen's Compensation Commission awarded compensation on March 21, 1958, and on April 2, 1958, the insurance company discontinued payment on advice of Dr. Wilkerson. In April, being unable to return to work, appellant was examined by a Dr. Gutman, an orthopedic surgeon, who found a congenital prespondylolisthesis (a forward slipping of one vertebra on another), recommended a corset, heat treatments and avoidance of heavy lifting for about a month. On the recommendation of the Commission's medical examiner, and after a hearing on July 15, 1958, the Commission ordered payment for temporary total disability, physiotherapy and a support for his back.

Upon request by appellant, appellee referred him to Dr. Reifschneider for examination and treatment on or about July 29, 1958. From then until October 13, 1958, appellant received treatment by the Drs. Reifschneider, in conjunction with X-rays taken by Dr. Jones for spondylolisthesis. On October 13 his compensation was again discontinued on advice of Dr. Reifschneider that he had reached his maximum improvement.

Appellant immediately requested a hearing. The extent of disability was controverted and he was ordered to be examined several times in October, November and December by the Commission's medical examiner, who referred him for further X-rays to Dr. Farber. Dr. Farber reported on December 22, 1958, that on lateral erect view he found a "slight anterior shift of the 5th lumbar vertebra upon the sacrum measuring about 5 mm." No abnormality appeared on oblique views or in the lateral view in lying position. The medical examiner ordered further examinations in February and March, 1959,

and on March 31, 1959, on the basis that he had not improved since November, 1958, recommended that he "should be hospitalized and a fusion should be considered. At the same time the disc space should be explored." The Commission ordered further examinations, and a neurosurgeon reported that he believed appellant had a ruptured lumbar disc. The medical examiner recommended surgery on July 7, 1959. The next day appellee requested a hearing on this recommendation, which was held by the Commission on August 31, 1959. On September 21, 1959, the Commission ordered that he be provided with the treatment recommended by the medical examiner, and the order was complied with.

Appellant then sued the appellee, Dr. Wilkerson and the Drs. Reifschneider in tort for negligence. The first two counts of his declaration were against the doctors and are not involved in this appeal. The third count was against the appellee, the compensation insurer of the appellant's employer. In essence that count alleged that appellant suffered an industrial accident for which he claimed and received benefit under the Workmen's Compensation Act, including compensation and medical attention by physicians engaged by the appellee, and that the physicians were negligent in failing to diagnose and treat him for spondylolisthesis and in sending him back to work, where his original injury was aggravated. He contended that the appellee was liable on the basis of *respondeat superior* and on the basis that appellee did not exercise a reasonable degree of intelligence, skill and ability in the selection of the physicians. Appellee demurred to this third count and Judge Harlan sustained the demurrer without leave to amend, on the ground that the insurer's liability and the employee's remedies under the Workmen's Compensation Act are exclusive of all other rights of action against the compensation insurance carrier.

On this appeal, appellant raises several questions. However, for the purposes of this opinion, they are all resolved into a single question of law: Can a person who has received benefits under the Workmen's Compensation Act, Code (1957), Article 101, maintain a subsequent action in tort for

negligence against the insurer of his employer for alleged malpractice by physicians provided by the insurer in their treatment of the person's injury. In Maryland this is a point of first impression.

This Court has held that the Workmen's Compensation Act is a substitute for the employer's common law liability for negligence, subject to his common law defenses, and creates an absolute, but limited, liability regardless of fault, such liability upon a conforming employer being exclusive. *Cox v. Sandler's, Inc.*, 209 Md. 193, 198, 120 A. 2d 674; *Baltimore Transit Co. v. State to Use of Schriefer,* 183 Md. 674, 677, 39 A. 2d 858. This is case law applying the provisions of Code (1957), Article 101, § 15, or its predecessors. It goes without saying that when the Legislature by statute authorized employers to contract with insurance companies in order to cover possible claims under Article 101 it intended the insurance carrier to stand in the position of the employer. This is nowhere better demonstrated than in Article 101, § 58 (when third party liable), which provides that if it is necessary for the employer or insurance company to pay benefits to an employee for injuries sustained which are due to a third party's negligence, the self-insured employer, or "insurance company, association or the State Accident Fund," may enforce for their own benefit the third party's liability. As we said above, this Court has never had the exact question in this case before us. In other jurisdictions where this problem has arisen, the right of the employee to sue the insurer has been denied due to the exclusiveness of the remedy under the applicable state law. *Raines v. Pa. Threshermen, Etc.* (Pa.), 137 A. 2d 257; *Baur v. Mesta-Machine Co.* (Pa.), 143 A. 2d 12; *Aetna Life Ins. Co. v. Watts* (Okla.), 296 Pac. 977; *Noe v. Travelers Ins. Co.* (Cal.), 342 P. 2d 976; *Schulz v. Standard Accident Ins. Co.* (E.D. Wash. N.D.), 125 F. Supp. 411 (Idaho Workmen's Compensation Act); *Sarber v. Aetna Life Ins. Co.* (Cal.), 23 F. 2d 434. Cases arriving at the same result interpreting the Federal Employees' Compensation Act or the Longshoremen's and Harbor Workers' Compensation Act are: *Fernandez v. Gantz* (D.C.), 113 F. Supp. 763; *Balancio v. United States* (N.Y.), 174 F. Supp.

636; *Lindsay v. George Washington University* (U.S.C.A. D.C.), 279 F. 2d 819.

It is true that there may be differences in the wording of the various state and federal compensation acts and that of Maryland. We feel that this is not important in the instant case, due to the wording of Article 101, § 58. That section, as noted above, allows actions against third parties liable for the injury. It speaks of these parties as being "some person other than the employer * * *." Considering the employer and the insurer to be one and the same as far as the exclusiveness of the remedy is concerned, the appellant is precluded from maintaining his action under this section, since the insurer-appellee is not a third party as contemplated by § 58.

We think the opinion in *Schulz v. Standard Accident Ins. Co., supra,* is particularly applicable here. In that case, the United States District Court for the Eastern Division of the Northern District of Washington had before it the application of the Idaho law. The facts of that case were quite similar to those in the instant case. The cause of action arose from the alleged malpractice of a doctor who had treated the employee at the request of the insurer. In citing an earlier Idaho case the court stated, at page 415:

> "*Hancock v. Halliday* [150 P. 2d 137] sanctions an action by an employee for damages for aggravation of an industrial injury against physicians as third persons. It does not sanction such an action against the employer or his insurance carrier. Clearly, neither of them is 'some other person than the employer' within the meaning of the Idaho Compensation Act. An action against the employer would be inconsistent with the subrogation provisions of the Act, for how could an employer be subrogated to a right of action against himself? Such actions, moreover, would open the door to possible double recovery, as the injured workman could accept and receive full compensation under the Act and then maintain an action for damages against his employer. It is my conclusion that, in Idaho, as elsewhere, 'under the great weight

of authority,' a workman may not recover from his employer, or the latter's insurance carrier, damages for aggravation of his injury resulting from the negligence of a physician in examination or treatment performed as prescribed by the Workmen's Compensation Act.

We hold that under the provisions of Article 101 appellant is barred from bringing this action against the appellee-insurer as to the alleged malpractice of the physicians recommended by it to the appellant.

*Judgment affirmed, with costs.*