813 F.2d 402
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Kenneth E. MORRIS, Appellant,
v.
MID-FLORIDA MINING CO., Appellee.
 No. 86-1525.
 United States Court of Appeals, Fourth Circuit.
 Argued July 15, 1986.
Decided Sept. 4, 1986.
 
 Before PHILLIPS, SPROUSE and CHAPMAN, Circuit Judges.
 Kelly J. Golden (David W. Goldman; Bryan, Bahnmuller, King, Goldman and McElveen, on brief), for appellant.
 Robert W. Foster, Jr. (James C. Gray, Jr.; Nelson, Mullins, Grier & Scarborough, on brief), for appellee.
 PER CURIAM:
 
 
 1
 This action arose out of a work site injury which allegedly resulted from the defendant's negligence. The district court granted summary judgment for the defendant, ruling that the defendant was the plaintiff's statutory employer under the South Carolina Worker's Compensation Act, S.C.Code Ann. Sec. 42-1-10 et seq. (Law.Co-op.1976), and was, therefore, immune from the plaintiff's common-law tort action. The central issue on appeal is whether the district court erred in holding the plaintiff to be a statutory employee of the defendant. We affirm.
 
 
 2
 * At the time of the accident, the plaintiff was technically employed by SCA Services, Inc., a company primarily in the business of hazardous waste disposal in Pinewood, South Carolina. In disposing hazardous waste, cells are first dug in deposits of fuller's earth, an absorbent form of clay. The fuller's earth which is removed is then dried in a special rotary kiln. Much of this dried fuller's earth is used in preparing the hazardous waste for burial in the cell. However, approximately twenty-five percent of the fuller's earth is not needed for hazardous waste disposal; it has commercial value and is usually sold as kitty litter.
 
 
 3
 SCA Services has two wholly owned subsidiaries, South Carolina SCA Services, Inc. (SCSCA), and SCAT, Inc. SCSCA operated the hazardous waste disposal business at Pinewood for SCA Services, and SCAT mined and processed the fuller's earth and sold the excess for commercial purposes.
 
 
 4
 Prior to 1982, SCAT experienced continual problems in processing the clay and it incurred losses on a regular basis. In April, 1982, the defendant, Mid-Florida Mining, (Mid-Florida), entered into an agreement with SCA Services to manage the fuller's earth processing department and to run a kitty litter packaging operation at the Pinewood facility. The agreement provided that Mid-Florida would lend its management expertise to SCAT in exchange for the exclusive right to package and distribute all process clay not utilized by the hazardous waste operation. Mid-Florida supplied the equipment necessary to establish a satellite operation between its other facilities in New Jersey and Florida. Mid-Florida further agreed to replace SCAT's mining and processing equipment as necessary. With the exception of the department manager, SCAT retained all of its employees. The significant financial aspect of the arrangement was that Mid-Florida did not purchase the SCAT facility; rather, Mid-Florida paid all costs incurred by SCAT during the packaging operation, including salaries, benefits, insurance premiums, worker's compensation premiums, rent, taxes and the like. SCA Services absorbed no costs which were not reimbursed by Mid-Florida, and it made no profit on the packaging operation.
 
 
 5
 The plaintiff worked exclusively in the packaging department under the supervision of a Mid-Florida employee. He operated a forklift, and his job was to load packages of kitty litter, owned by Mid-Florida, on to Mid-Florida trucks for delivery to Mid-Florida customers. His injuries occurred when his forklift fell from the back of a Mid-Florida truck as the truck pulled away from the loading dock.
 
 
 6
 The plaintiff filed a worker's compensation claim, which was paid by SCAT. The plaintiff then brought this tort action against Mid-Florida. Mid-Florida moved for summary judgment on the ground that it was the plaintiff's statutory employer under S.C.Code Ann. Sec. 42-1-400 at the time of the accident so that the suit was barred by S.C.Code Ann. Sec. 42-1-540. The plaintiff opposed this motion, and moved for an order certifying the question to the South Carolina Supreme Court pursuant to S.C.Sup.Ct.R. 46. The district court denied certification, holding that no novel question of law was presented, and granted the defendant's motion for summary judgment. This appeal followed.
 
 II
 
 7
 The South Carolina worker's compensation system provides that when an injured employee accepts the benefits afforded under the Worker's Compensation Act, his common law remedies against his employer are extinguished. S.C.Code Ann. Sec. 42-1-540. The definition of an employer, however, is not limited to the injured party's immediate employer, but rather includes all those for whom the employee is working, either directly or indirectly. S.C.Code Ann. Secs. 42-1-410, 42-1-4201; see also Chavis v. E.I. DuPont de Nemours & Co., 283 F.2d 929 (4th Cir.1960); McCaskey v. Daniel International Corp., 442 F.Supp. 1360 (D.S.C.1977). Thus, an employee may have more than one employer who would be subject to the state worker's compensation scheme, Hairston v. RE: Leasing, Inc., 286 S.C. 493, 334 S.E.2d 825 (S.C.App.1985), and each of which would be allowed the immunities established under the exclusive remedy provision of S.C.Code Ann. Sec. 42-1-540. Singleton v. J.P. Stevens & Co., 533 F.Supp. 887 (D.S.C.1982), aff'd, 726 F.2d 1011 (4th Cir.1984). To determine whether an employee falls within the worker's compensation coverage afforded by S.C.Code Ann. Sec. 42-1-400, the basic test is whether the work being done is part of the general trade, business, or occupation of the owner. Bridges v. Wyandotte Worsted Company, 243 S.C. 1, 132 S.E.2d 18 (1963); Marchbanks v. Duke Power Company, 190 S.C. 336, 2 S.E.2d 825 (1939). Thus, for plaintiff to elude the statutory bar of the Act, he must not be performing or executing any work which is a part of Mid-Florida's trade, business or occupation. Singleton v. J.P. Stevens & Company, supra.
 
 
 8
 The facts in this case are not in dispute. Mid-Florida's business is the mining, processing, packaging and selling of kitty litter. At the time of the accident, the plaintiff was engaged in loading Mid-Florida's kitty litter on to Mid-Florida's truck. SCAT was being reimbursed in full for the plaintiff's salary and benefits. It is apparent that the plaintiff was engaged in work which is a part of Mid-Florida's general trade or business, and that Mid-Florida would have been liable for the plaintiff's worker's compensation claim. Mid-Florida is a statutory employer of Morris and therefore immune from his common law tort claim.
 
 
 9
 Having examined the other questions raised by the plaintiff on appeal and found them to be without merit, the decision of the district court is
 
 
 10
 AFFIRMED.